UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **J&H Web Technologies, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**Microsoft Corporation,**<br><br>Defendant. | Case No. 2:23-cv-277<br><br>**JURY TRIAL DEMANDED** |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

J&H Web Technologies, LLC ("Plaintiff") hereby files this Original Complaint for Patent Infringement against Microsoft Corporation ("Microsoft" or "Defendant"), and alleges, upon information and belief, as follows:

## THE PARTIES

1. J&H Web Technologies, LLC is a limited liability company organized and existing under the laws of the State of Texas with its principal place of business at 12333 Sowden Rd, Ste B, #32776, Houston, Texas 77080.

2. Defendant Microsoft is a Delaware corporation with a place of business in this District located at 5360 Legacy Drive, Plano, Texas 75024 and 1601 South Shiloh Road, Garland, Texas 75042. Upon information and belief, Microsoft employs individuals in this Judicial District involved in the repairs, sales and marketing of its products. Microsoft may be served with process via its registered agent Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701. Upon information and belief, Microsoft does business in Texas, directly or through intermediaries,

and offers its products and/or services, including those accused herein of infringement, to customers and potential customers located in Texas, including in the judicial Eastern District of Texas.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1338(a).

4. This Court has personal jurisdiction over Defendant because Defendant conducts business in and has committed acts of patent infringement in this District and the State of Texas and has established minimum contacts with this forum state such that the exercise of jurisdiction over Defendant would not offend the traditional notions of fair play and substantial justice.

5. Defendant is subject to this Court's general and specific jurisdiction pursuant to due process and/or the Texas Long Arm Statute due at least to Defendant's substantial business in the State of Texas and this District, including through its past and ongoing infringing activities, because Defendant regularly does and solicits business herein, and/or because Defendant has engaged in persistent conduct and/or has derived substantial revenues from goods and services provided in the State of Texas and this District.

6. Defendant transacts substantial business with entities and individuals in the State of Texas and this District, by among other things, willfully using the infringing methods and systems throughout the State of Texas and this District. Defendant relies on the infringing methods and systems to introduce and sell millions of products into the stream of commerce with the knowledge and expectation that they will be sold in the State of Texas and this District.

7. Microsoft maintains regular, physical, continuous, and established places of businesses, including data centers, in this District, which Microsoft has established, ratified, and controlled; have employed thousands of employees to conduct their business from this District; and from which

they have willfully infringed the Asserted Patents in order to benefit themselves in this District. Microsoft commits acts of infringement in this District, including as explained further below by making and using the infringing systems in, and performing at least one step of the accused methods of the Asserted Patents, at their regular and established places of business in this District.

8.  Microsoft has multiple Authorized Service Providers in the Eastern District of Texas. A resident can visit Microsoft's website to find a list of these repair centers:

> **Surface repair by Microsoft Authorized Service Providers**
>
> Article • 05/22/2023 • 1 contributor • Applies to: Windows 10, Windows 11     💧 Feedback
>
> **In this article**
>
> | Global ASP network
>
> As part of our commitment to provide great service and support to all our customers, we're building a great network of authorized service providers (ASPs) to help repair and service your Surface devices. ASPs work closely with Microsoft to help resolve issues that may occur with your Microsoft devices. ASPs perform repairs on behalf of Microsoft, have direct access to Microsoft support, and use genuine Microsoft parts.
>
> **Global ASP network**
>
> The growing ASP network consists of more than 160 locations.
>
> **Americas**
>
> - CompuCom
> - Compugen
> - Coreio
> - DXC Technology
> - FedEx
> - Integrated Technology Group (ITG)
> - Microserve
> - TD SYNNEX
> - UDT

See https://learn.microsoft.com/en-us/surface/authorized-service-providers.

9.  One of Microsoft's ASPs, DXC Technology, lists at least three facilities in this District:



See http://m.richardsonchamber.com/Mobile/Members/memberdetails/dxc-technology (screenshot of Richardson Chamber of Commerce).



See https://www.google.com/search?q=dxc+technology+plano+tx&rlz=1C5CHFA_enUS795US795&oq=dxc+technology+plano+&aqs=chrome.0.69i59j69i57j0i512l2j0i22i30j0i390i650j69i60l2.7960j0j4&sourceid=chrome&ie=UTF-8#ip=1&rlimm=8053924025365972525 (screenshot of Google search results).



See https://www.google.com/search?q=dxc+technology+plano+tx&rlz=1C5CHFA_enUS795US795&oq=dxc+technology+plano+&aqs=chrome.0.69i59j69i57j0i512l2j0i22i30j0i390i650j69i60l2.7960j0j4&sourceid=chrome&ie=UTF-8#ip=1&rlimm=8053924025365972525 (screenshot of Google search results).

10. Another of Microsoft's ASPs, TD Synnex, lists another facility in this District:



See https://www.synnexcorp.com/us/about/locations/ (screenshot of TD Synnex location in this District).

11. DXC Technology and TD Synnex have fixed geographical locations. They are "regular" and "established" because they operate in a "steady, uniform, orderly, and methodical manner" and are sufficiently permanent. These locations are "of the defendant" because Microsoft has contractual rights with both—authorized service providers in the United States. Microsoft also ratifies these

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                         5

facilities through its advertising of them through its website (https://learn.microsoft.com/en-us/surface/authorized-service-providers).

12. Microsoft has a defined places and sets out the physical specifications for its exclusive and separate areas within the DXC Technology and TD Synnex locations. Microsoft also explicitly retains control over the exclusiveness of the defined places and separate areas as well as their locations, resulting in physical locations for Microsoft within this District.

13. Microsoft also has regular, physical presences of Microsoft employees in this District conducting Microsoft's business. Microsoft maintains a regular and established place of business at the Microsoft defined places and separate areas at the DXC and TD Synnex locations by the regular, physical presence of its employees.

14. DXC and TD Synnex are Microsoft's agents for the purpose of conducting Microsoft's business in this District because Microsoft provides regular instructions directing DXC's and TD Synnex's performance of the repairing, refurbishing, warehousing, and packaging services that Microsoft offers to its customers.

15. Microsoft retains complete, absolute, and exclusive control over the its exclusive and separate areas within the DXC Technology and TD Synnex locations.

16. Microsoft ratifies its exclusive and separate areas within the DXC and TD Synnex locations because it exercises interim control over the DXC's and TD Synnex's activities and holds out to the public that Microsoft's repairing services are being performed at the DXC and TD Synnex locations in this District. Within the exclusive and separate areas within the DXC and TD Synnex locations, Microsoft has absolute control over their conduct. Microsoft does not merely use the exclusive and separate areas within the DXC and TD Synnex locations within this District, but

16. (cont.) controls all aspects of their conduct as it pertains to Microsoft's exclusive and restrictive exclusive Microsoft areas.

17. As shown above, venue is proper in this District pursuant to 28 U.S.C. § 1400(b) because Defendant has regular and established physical places of business in this District and have committed acts of patent infringement in the District.

## PATENTS-IN-SUIT

18. Plaintiff is the sole and exclusive owner, by assignment, of U.S. Patent No. 8,935,342 ("the '342 Patent" and the "Patents-in-Suit") relating to methods and systems for detecting and unsubscribing an email address from a series of subscriptions.

19. By operation of law, the '342 Patent was originally issued and exclusively vested to the named inventor, Ramin Shahidi, as of the issue date of the '342 Patent. Plaintiff has sole and exclusive standing to assert the '342 Patent and to bring these causes of action.

20. The Patents-in-Suit are valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

21. The Patents-in-Suit includes numerous claims defining distinct inventions. As discussed below, the inventions generally relate to methods and systems for detecting and unsubscribing an email address from a series of subscriptions, particularly by examining the header contents, the sender's address, the subject, the body and comparing each message to other messages to identify patterns.

22. The priority date of each of the Patents-in-Suit is at least as early as March 9, 2012. As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.

23. Unsubscribing from such email subscription lists can be time consuming and complicated. Because mailers have different methods of allowing a user to unsubscribe, users are confused about the methods and have a difficult time opting out or "cleaning" out such email. For example, some

mailers include a list-unsubscribe header which requires the user to respond to the mailer with certain keywords in the subject or body. Second, some mailers require the user click and "opt out", "unsubscribe", or "email preference" link at the bottom of an email. A third method requires a user to respond via a reply-to method. Therefore, the ability to manage email subscriptions lists in bulk may seem unmanageable.

24. At the time of the inventions, prior art, such as SPAM filters, assist users in automatically classifying information as it arrives, a user's prior interaction with a certain goods or service provider may render such filtering undesirable and inaccurate. For example, marking a subscription list email as spam may cause product or service purchase receipts to be labeled as spam as well, thereby causing the user to miss important information which was filtered inadvertently. Further, mailing list may have been desirable at one previous point in time, but are now undesirable to the user.

25. The inventors of the '342 Patent conceived new methods and systems for detecting and unsubscribing one or more email addresses from a series of email subscriptions. This is achieved by examining the emails in the mailbox of the address and determining if they are from a subscription/automated mailing/list server, which is achieved by examining the header contents, the sender's address, the subject, the body and comparing each message to other messages to identify patterns. Then, the methods and systems examine each message to identify methods of unsubscribing from the subscription. Finally, the methods and systems unsubscribe from the subscriptions either automatically, or in a semi-manual method and optionally deleting all messages associated with the subscription.

26. The '342 Patent is a pioneering patent, and has been cited as relevant prior art in 151 subsequent United States Patent Applications, including Applications Assigned to such technology leaders as OneTrust, Bank of America and Allstate.

27. The claims of the '342 Patent were all properly issued, and are valid and enforceable for the respective terms of their statutory life through expiration, and are enforceable for purposes of seeking damages for past infringement even post-expiration. *See, e.g., Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.,* 655 F.3d 1291, 1299 (Fed. Cir. 2011) ("[A]n expired patent is not viewed as having 'never existed.' Much to the contrary, a patent does have value beyond its expiration date. For example, an expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286") (internal citations omitted).

28. The expiration date of the '342 Patent is no earlier than December 21, 2032.

## MICROSOFT'S INFRINGING PRODUCTS

29. Upon information and belief, Microsoft makes, sells, advertises, offers for sale, uses, or otherwise provides email software and systems that utilize the '342 Patent's patented detecting and unsubscribing methods.

30. On information and belief, Microsoft has manufactured and sold products that infringe the '342 Patent and which include at least, but not limited to Microsoft Outlook Online.

31. As shown in more detail below, Microsoft Outlook Online includes each and every limitation of at least, but not limited to, claims 1 of the '342 Patent and therefore literally infringe these claims. Plaintiff reserves the right to assert additional claims and to assert infringement under the doctrine of equivalents in light of information learned during discovery or in view of this Court's claim construction order.

32. Aspects of the infringing Microsoft Outlook Online product found are shown below. As shown in the screenshots below of Microsoft's Outlook Online product performing, it includes the required identifying list-unsubscribe headers in a message header; or identifying unsubscribe methods within the message body; and wherein identifying unsubscribe methods within the message body further comprises the collection of unsubscribe hyperlinks from the message body, and identifying those hyperlinks as potential unsubscription methods, all of the same fundamental components claimed in the '342 Patent.

33. For example, the elements of identifying list-unsubscribe headers in a message header; or identifying unsubscribe methods within the message body are shown in the following images from Outlook Online.







ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT 11



**COUNT I**
**Infringement of U.S. Patent No. 8,935,342B2**

34. Plaintiff incorporates the above paragraphs by reference.

35. Defendant without authority, continues to make, use, sell, offer to sell, and/or import into the United States its Accused Instrumentalities as shown above.

36. Defendant thus has infringed and continues to infringe at least claims 1 of the '342 Patent literally and/or under the doctrine of equivalents.

37. Defendant has also actively induced and will continue to actively induce the infringement of at least one of claims 1 of the '342 Patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively and knowingly aiding and abetting infringement of others through activities such as creating and/or distributing tutorials, brochures, manuals, instructional documents, and/or similar materials with instructions on creating, manufacturing, designing, assembling and/or

implementing infringing products, with the specific intent to induce others to directly make, use, offer for sale, sell, and/or import into the United States products that fall within the scope of the '342 Patent, without license or authority from Plaintiff. On information and belief, Defendant knows that the induced acts constitute infringement of the '342 Patent.

38. Defendant individually, collectively, or through others or intermediaries, have contributorily infringed, and/or is contributorily infringing, in violation of 35 U.S.C. § 271(c), at least one claim of the '342 Patent by making, using, offering for sale, selling, and/or importing, material parts of the inventions claimed in the '342 Patent, which are not a staple article or commodity of commerce suitable for substantial non-infringing use, and knowing the accused parts to be especially made or especially adapted for use in an infringement of the '342 claims.

39. Microsoft has been on actual notice of the '342 Patent at least as early as the date Acompli, Inc., who Microsoft purchased, negotiated use and license as early as July 2014. On July 7, 2014 Plaintiff entered into a mutual NDA to shares its services and software.

> **THIS MUTUAL NON-DISCLOSURE AGREEMENT** (this "Agreement") is entered into between Acompli, Inc. ("Acompli") and Henal M. Patel and JdH Web Technologies, ul ("Company") as of July 7, 2014, (the "Effective Date"), to protect the confidentiality of certain confidential information of Acompli or of Company to be disclosed under this Agreement solely for use in evaluating or pursuing a potential business transaction between the parties (the "Permitted Use"). Acompli and Company may be referred to herein individually as a "Party" and collectively as the "Parties."

40. A week later, Plaintiff provided Acompli with its methodology and software for evaluation, which was provided with a clear notice of "Patent Pending."

> From: henal@unlistr.com
> To: khenrikson@acompli.com; jjzhuang@acompli.com
> CC: jim@unlistr.com
> Subject: Unlistr Flow Chart + Source
> Date: Tue, 15 Jul 2014 11:12:22 -0500
>
> Kevin, JJ,
>
> Thanks for the call yesterday. For evaluation only purposes, please find attached a .zip containing the following:
>
> 1. Unlistr's unsubscribe methodology (flow chart); and,
> 2. scrubbed src collection from Unlistr for Android (java).
>
> Please take a look a MailAnalyzer.java and UnsubscribeService.java (among other pertinent code). Let me know if you have any questions. Looking forward to discussing next steps.
>
> Thanks,
>
> **Henal M. Patel**
> Founder | Unlistr.com | 281.650.6309
>
> ---
>
> 📎 Unlistr Sample Docs & Src.zip
> 2439K

```
(c) J&H Web Technologies, LLC.  Proprietary and Confidential.  Patent
Pending.  The Information is being provided for evaluation purposes
only.

ALL CONFIDENTIAL AND PROPRIETARY SOURCE CODE AND DOCUMENTATION HEREIN
THIS .ZIP PACKAGE (HEREINAFTER REFERRED TO AS "INFORMATION") IS BEING
PROVIDED PURSUANT TO THAT CERTAIN MUTUAL NON-DISCLOSURE AGREEMENT BY
AND BETWEEN ACOMPLI, INC. AND HENAL M. PATEL AND J&H WEB TECHNOLOGIES,
LLC DATED EFFECTIVE JULY 7, 2014.

Nothing herein establishes a claim or right of ownership to the
Information. J&H Web Technologies and/or Henal M. Patel retain all
right, title and interest, including all patent applications and
disclosures, copyright rights, trade secret rights, and other
intellectual property rights in and to the Information.
```



41. Three months later, Acompli claimed it was not interested in Plaintiff's robust and novel approach to unsubscribing email subscriptions.



42. On December 1, 2014 it was announced that Microsoft acquires Acompli for $200M, touting its success in management of emails.



43. In January 2015, Plaintiff made Acompli aware and provided notice that U.S. Patent No. 8,935,342 has issued, which embodied the inventions Plaintiff had provided Acompli for evaluation.



ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                               16

44. Defendant has further been on actual notice of the '342 Patent at least as early as the date of this Original Complaint. Defendant's direct and indirect infringement of the '342 Patent have thus been committed with knowledge of the '342 Patent, making Plaintiff liable for direct, indirect, and willful infringement.

45. Defendant's infringement of the '342 Patent will continue to damage Plaintiff, causing irreparable harm for which there is no adequate remedy at law, unless it is enjoined by this Court.

46. Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

47. Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court enter judgment against Defendant as follows:

1. Declaring that Defendant has infringed the '342 Patent;

2. Awarding Plaintiff its damages suffered because of Defendant's infringement of the '342 Patent;

3. Awarding Plaintiff its costs, reasonable attorneys' fees, expenses, and interest;

4. An award to Plaintiff of enhanced damages, up to and including trebling of Plaintiff's damages pursuant to 35 U.S.C. § 284 for Defendant's willful infringement of the '342 Patent;

5. Granting a permanent injunction pursuant to 35 U.S.C. § 283, enjoining Defendant from further acts of infringement with respect to the '342 Patent;

6. Awarding Plaintiff ongoing post-trial royalties for infringement of the non-expired '342 Patent; and

7. Granting Plaintiff such further relief as the Court finds appropriate.

## JURY DEMAND

Plaintiff demands trial by jury, under Fed. R. Civ. P. 38.

Dated: June 15, 2023

Respectfully Submitted

*/s/ Randall T. Garteiser*
M. Scott Fuller
  Texas Bar No. 24036607
  sfuller@ghiplaw.com
Randall Garteiser
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
René A. Vazquez
  Virginia Bar No. 41988
  rvazquez@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420

**ATTORNEYS FOR PLAINTIFF**